**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**FASHION LICENSING OF AMERICA, INC. and**
**MARLA METZNER, Individually,**

                                 **Plaintiffs,**

      vs.                                               **1:25-CV-1539**
                                                        **(MAD/DJS)**

**HEMINGWAY, LTD.,**

                              **Defendant.**

---

**APPEARANCES:**                                 **OF COUNSEL:**

Clearwater, Florida 33767               **HENRY NEAL CONOLLY, ESQ.**
Attorney for Plaintiffs[1]

**DENLEA & CARTON LLP**             **JEFFREY I. CARTON, ESQ.**
2 Westchester Park Drive, Suite 410     **JOHN P. KANE, ESQ.**
White Plains, New York 10604
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 31, 2025, Plaintiffs Fashion Licensing of America, Inc. ("FLA") and Marla

Metzner, individually, commenced this action against Defendants Hemingway, Ltd.

("Hemingway" or "Defendant") and Angela Hemingway, individually. *See* Dkt. No. 1

("Complaint"). Plaintiffs filed an amended complaint on January 20, 2026, removing Angela

Hemingway as a Defendant. *See* Dkt. No. 14 ("Amended Complaint"). The Amended Complaint

---

[1] Counsel for Plaintiffs' address on the Court's docket is different than the address indicated on his response to the motion to dismiss. *See* Dkt. No. 18-6. Pursuant to Local Rule 10.1(c)(2), counsel is responsible for updating the Court about any changes in his address.

sets out a claim of breach of contract. *See* Am. Compl. ¶¶ 18–26. Before the Court is Defendant's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction. *See* Dkt. No. 17 ("Motion"). For the following reasons, Defendant's Motion is denied.

## II. BACKGROUND

As alleged in the Amended Complaint, Plaintiff FLA "is a domestic corporation organized under the laws of the State of New York with its office and principal place of business in Columbia County at Old Chatham, New York." Am. Compl. ¶ 2. Plaintiff Marla Metzner "is an individual and officer of FLA, residing in Columbia County at Old Chatham, New York." *Id.* ¶ 3. Defendant is, "upon information and belief, a Washington State corporation incorporated in 1993." *Id.* ¶ 4. Plaintiffs allege that Defendant's "business office and nerve center [are] in the State of Idaho." *Id.*

This cases arises out of Defendant's alleged failure to perform in accordance with a "Representation Agreement" reached with Plaintiffs. *See* Am. Compl. ¶¶ 1, 8. Plaintiffs allege that Defendant breached its contractual obligations by failing to pay certain royalties and fees due to Plaintiffs. *See* Am. Compl. ¶¶ 18–26.

On February 9, 2026, Defendant moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, arguing that there is a lack of complete diversity among the parties because they are all citizens of New York. *See* Mot. Plaintiffs filed a response in opposition, *see* Dkt. No. 18-6 ("Response"), and Defendant filed a reply, *see* Dkt. No. 26 ("Reply").

## III. DISCUSSION

A.    **Standard of Review**

A party may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A case is properly dismissed

for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova*, 201 F.3d at 113 (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05-CV-2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.    Subject Matter Jurisdiction**

Plaintiffs allege that Defendant is incorporated in Washington State, and its "business office and nerve center [are] in the State of Idaho," and therefore there is diversity from Plaintiffs, who are citizens of New York. Am. Compl. ¶¶ 2–4. In support, Plaintiffs allege that Angela Hemingway, Defendant's President and Board Chair, "resides in Sun Valley, Idaho and Pebble

3

Beach, California and is the senior member of management, in rank and in years with the company, and she manages Hemingway and its finances day to day in Pebble Beach California and in Sun Valley, Idaho." *Id.* ¶ 4. Additionally, Plaintiffs allege that the "other board directors and officers reside in Montana and Connecticut, and in no case do [they] reside in or direct and control Hemingway from New York." Resp. at 2.[2]

In its Motion, Defendant concedes that it is incorporated in Washington State but disputes the allegation that its "business office and nerve center" are in Idaho. Mot. at 2. Instead, Defendant argues that its "principal place of business is in New York." *Id.* Defendant states that its "official agent of record and business management arm," Collective 222, LLC ("Collective 222"), is located and "performs all of its functions on behalf of Hemingway, Ltd. from Collective 222's offices" in New York (the "Headquarters"). *Id.*; *see* Dkt. No. 17-2 ("Klinger Declaration") ¶¶ 3–11. Furthermore, Defendant notes that all of its "strategic decision-making" and "daily operations take place in the Headquarters," that it "holds itself out as being headquartered at" the Headquarters "in its incorporating documents . . . and in its contracts with third parties," that its "corporate books and records are maintained at the Headquarters," that "its bank accounts are in New York," and that it "has no corporate infrastructure or presence outside of New York." Mot. at 2–3; *see* Dkt. No. 17-2 ¶¶ 3–11.

"The diversity of citizenship statute grants a federal court jurisdiction over suits where plaintiffs and defendants are 'citizens of different States' and 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"[3] *GH Am. Energy LLC v. Greenalia*

---

[2] Citations are to the pagination provided in the footer of the parties' filings.

[3] There is no dispute that the matter in controversy in this case exceeds $75,000. *See generally* Am. Compl.; Mot.

*Wind Power Blue Hills, LLC*, No. 24-CV-05645, 2025 WL 919652, at \*4 (S.D.N.Y. Mar. 26, 2025) (quoting 28 U.S.C. § 1332(a)(1)). Section 1332 "requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014).

"For the purposes of diversity of citizenship jurisdiction, 'a corporation shall be deemed to be a citizen of every State' where it is 'incorporated' as well as 'where it has its principal place of business.'" *Benchmark Invs., Inc. v. PAVmed Inc.*, No. 20-CV-10888, 2021 WL 5967918, at \*2 (S.D.N.Y. Dec. 16, 2021) (quoting 28 U.S.C. § 1332(a)(1)). "A corporation's principal place of business is its 'nerve center.'" *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)). The "'nerve center' . . . should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Hertz*, 559 U.S. at 93. The "nerve center" is "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* "[T]he test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015). The "'nerve center' . . . is where the lion's share of corporate decisionmaking and direction occurs," while "the situs of things like 'strategic meetings,' 'tax filings,' and 'corporate records,'" are "irrelevant." *Benchmark Invs.*, 2021 WL 5967918, at \*2.

Defendant points to many factors that support the conclusion that its business operations and activities are indeed run within New York. *See* Mot. at 4–5. However, such business-related factors are not sufficient, nor are they necessarily relevant, for determining the location of its "nerve center." *See Benchmark Invs.*, 2021 WL 5967918, at \*2. While it is clear that Collective

222 and its owner and founder Bettina Klinger perform Hemingway's business functions from New York, Collective 222 is not Hemingway. *See* Mot. at 4–5; Dkt. No. 17-2 ¶ 2. Instead, the key information is the location of Hemingway's "actual center of direction, control, and coordination." *Hertz*, 559 U.S. at 93. As Plaintiffs point out, the Supreme Court in *Hertz* noted that this test may sometimes "produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332," such as where "the bulk of a company's business activities visible to the public" take place in one state, "while its top officers direct those activities" from another state. *Id.* at 96. The Supreme Court also expected that "hard cases" may arise "in this era of telecommuting, [where] some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Id.* at 95–96.

As to the location of Defendant's "actual center of direction, control, and coordination," the Court looks to the location of its top officers and where they direct activities. *Id.* at 93. Defendant notes that it "has three officers and directors, each of whom live and perform their duties to Hemingway, Ltd. in three different states (California, Connecticut, and Montana)," and that "Hemingway, Ltd. has no employees." Dkt. No. 17-2 ¶ 3. The Board of Directors "met three times in the Headquarters" in 2025, during which time they "took a number of corporate actions that relate to [Defendant's] long-term plans and strategy." *Id.* ¶ 6. Plaintiffs state that historically Defendant "averaged two board meetings per year, and met at differing places including Idaho, Montana[,] and New York," and that these "[m]eetings were arranged where and when convenient for the board and shareholders." Dkt. No. 18 ("Metzner Declaration") ¶ 13. The Board would also meet for "weekly Zoom calls." Dkt. No. 17-2 ¶ 7. Plaintiffs assert that these Zoom meetings were held "to address significant issues of policy, control and direction." Dkt. No. 18 ¶ 17.

6

Although the Board members met in person on occasion, including in New York, such a meeting place is not the "nerve center" simply by virtue of the attendance of "directors and officers who have traveled there for the occasion." *Hertz*, 559 U.S. at 93. Instead, the "nerve center" is "where the lion's share of corporate decisionmaking and direction occurs." *Benchmark Invs.*, 2021 WL 5967918, at *2. Given that the Board met weekly over Zoom, the locations where they took their Zoom calls would appear to be where the bulk of their direction, control, and coordination occurred. They "work at several different locations, . . . communicating over the Internet," which is a complication to the "nerve center" test anticipated by the Supreme Court. *Hertz*, 559 U.S. at 95–96. The states from which they videoconferenced are indeed relevant to the "nerve center" test. *See Zurich Am. Life Ins. Co. v. Nagel*, No. 20-CV-11091, 2021 WL 3077861, at *3 (S.D.N.Y. July 20, 2021). In *Zurich*, the fact that the chairman videoconferenced from Illinois was "relevant" but not determinative to the "nerve center" test, as several other directors and high-level officers, including the "President and CEO, General Counsel, Chief Actuary Officer, Chief Risk Officer, and Chief Investment Officer [were] all located in New York." *Id.* Likewise, in *Benchmark*, the court noted that the company's "highest-level executives . . . all work out of New York," including the CEO who worked remotely from New York. *Benchmark Invs.*, 2021 WL 5967918, at *3. Here, in contrast, none of the directors are located in New York. *See* Dkt. No. 17-2 ¶ 3.

Among the locations from which the directors videoconferenced, the center of direction, control, and coordination here would most logically be the location of Defendant's Board Chair, President, and CEO, Angela Hemingway. *See* Dkt. No. 18 ¶ 9.[4] Based on the parties'

---

[4] The Court notes that, while this may be true under the facts of this case in which all directors reside in different states, such a proposition may not necessarily hold for a hypothetical situation

submissions, she "is the senior member of the team, both in rank and in years with the company," and leads the Board. Dkt. No. 18 ¶¶ 9, 18; *see* Dkt. No. 18-5. As such, the center of direction, control, and coordination is in Idaho or California, where Angela Hemingway resides and attends meetings via videoconference. *See* Dkt. No. 18 ¶ 18.[5]

For the purposes of diversity jurisdiction at the motion to dismiss stage, the Court must decide whether Defendant's principal place of business is or is not in New York. Plaintiffs are admittedly vague on their preference between Idaho or California. *See* Resp. at 11. Nonetheless, they have sufficiently alleged that the "nerve center," and as such the principal place of business, is not in New York. Accordingly, for the purposes of this Motion, the Court finds that there is complete diversity. Therefore, Defendant's Motion pursuant to Rule 12(b)(1) is denied.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that as a result of the filing of the amended complaint on January 20, 2026 (Dkt. No. 14), the Clerk of the Court shall terminate Angela Hemingway as a defendant; and the Court further

---

in which Angela Hemingway resides in one state and the other directors all reside in another state. *See, e.g.*, *Zurich Am. Life Ins. Co.*, 2021 WL 3077861, at *3.

[5] The Court also notes that courts outside the Second Circuit have held that a "key consideration" for locating the "nerve center" is "where the president or chief executive officer reports to work." *Gaete v. Arctic Glacier Premium Ice*, No. 24-CV-1396, 2025 WL 642092, at *4 (E.D. Pa. Feb. 27, 2025) (quoting *Aizen v. Am. Healthcare Admin. Servs., Inc.*, No. 18-CV-15195, 2019 WL 4686811, at *5 (D.N.J. Sept. 26, 2019).

**ORDERS** that in light of the Court's Text Order on March 9, 2026 (Dkt. No. 27), the Clerk of the Court is directed to reset the briefing deadlines related to Plaintiffs' motion for a preliminary injunction (Dkt. No. 20); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 13, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge